JAMES ADKINS

*v.*

BOBBY J. LEVERETTE, *Superintendent,*

WEST VIRGINIA PENITENTIARY

(No. 14024)

Decided December 13, 1977.

*James M. Haviland* for relator.

*Chauncey H. Browning*, Attorney General, *John L. MacCorkle, William D. Highland*, Assistant Attorneys General, for respondent.

MILLER, JUSTICE:

This case involves the question of whether our decision in *Conner v. Griffith*, W.Va., S.E.2d, (1977), should be applied retroactively. In *Conner*, we held that upon parole revocation, the failure to credit time spent on parole to the underlying sentence violates the Double Jeopardy Clause of the West Virginia Constitution.

Adkins filed this original proceeding for a writ of habeas corpus seeking to obtain the benefit of the *Conner* rule, even though his parole revocation occurred before that decision.

The concept of retroactivity determines how a case which substantially alters a relevant body of prior law should be applied to other cases.[1]

The United States Supreme Court in *Linkletter v. Walker*, 381 U.S. 618, 14 L. Ed. 2d 601, 85 S.Ct. 1731

---

[1] Professor Beytagh in *Ten Years of Non-Retroactivity: A Critique and a Proposal*, 61 Va. L. Rev. 1557, n. 2 (1975), gives the following summary of the doctrine:

"For the reader unfamiliar with the jurisprudence of retroactivity, an introductory perspective may be useful. The issue that the Court has sought to deal with is whether a case that substantially alters the relevant body of prior law should govern (1) only future cases and neither the parties before the court nor any previous or pending cases ('pure prospectivity'), (2) future cases as well as the litigants at bar but not previous or pending cases ('non-retroactivity'), or (3) future cases, the present litigants, and all fact situations arising before the date of the law-changing decision that are still reviewable either by direct appeal or by collateral attack ('retroactivity')."

(1965), made an extensive historical survey of the doctrine of retroactivity from which salient principles emerge. First, the doctrine arises out of the common law and is not circumscribed by the Federal Constitution. Secondly, the states are free to adopt their own rule. Thirdly, the doctrine applies in both civil and criminal cases. While recognizing that the common law rule made a decision fully retroactive, *Linkletter* determined that in appropriate cases a court may make its ruling prospective only. 381 U.S. at 628, 14 L. Ed. 2d at 607, 608, 85 S.Ct. at 1737.

No useful purpose would be served by a detailed tracing of the evolution of the doctrine in the United States Supreme Court. In *Stovall v. Denno*, 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 87 S.Ct. 1967 (1967), the Court, in elaborating on the *Linkletter* test for determining whether a decision should be given retroactive or prospective application, stated:

> "The criteria guiding resolution of the question [of retroactivity] implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

In the Court's most recent expression in *Hankerson v. North Carolina*, U.S., 53 L. Ed. 2d 306, 97 S.Ct. 2339 (1977), it determined that its prior decision in *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S.Ct. 1881 (1975), should be given complete retroactive effect. *Hankerson* appears to have substantially shifted the emphasis of the three-pronged analysis developed in *Stovall* by elevating the element of the "purpose to be served by the new standards." *Hankerson* relied on and heavily reinforced earlier language in *Williams v. United States*, 401 U.S. 646, 653, 28 L. Ed. 2d 388, 395, 91 S.Ct. 1148 (1971):

> "Where the major purpose of new constitutional doctrine is to overcome an aspect of the crimi-

nal trial that substantially impairs its truthfinding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances."

In *Robinson v. Neil,* 409 U.S. 505, 508, 35 L. Ed. 2d 29, 33, 93 S.Ct. 876, 877 (1973), the Supreme Court recognized that its normal rule on retroactivity had little applicability where the decisional change affects matters outside the trial proceedings. The Court in *Robinson* found that its decision in *Waller v. Florida,* 397 U.S. 387, 25 L. Ed. 2d 435, 90 S.Ct. 1184 (1970), holding that the Double Jeopardy Clause prohibited successive municipal and state prosecutions, should be given complete retroactive effect. The same full retroactive application was previously given to *Benton v. Maryland,* 395 U.S. 784, 23 L. Ed. 2d 707, 89 S.Ct. 2056 (1969), which had made the double jeopardy provisions of the Fifth Amendment applicable to the states, by way of the Fourteenth Amendment, in *North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S.Ct. 2072 (1969). *See also, Ashe v. Swenson,* 397 U.S. 436 at note 1, 25 L. Ed. 2d 469, 472, 90 S.Ct. 1189 (1970).

Turning to our own jurisdiction, Judge Brannon in *Falconer v. Simmons,* 51 W.Va. 172, 41 S.E. 193 (1902), discussed the subject extensively, including this remark:

"If the right affected is one under general common law, clearly the old decision was never law, and the transaction, though dating prior to the later decision, is governed by it." [51 W.Va. at 177]

He then came to the following conclusion, which is set out in Syllabus Point 2:

"An overruled decision is regarded not law, as never having been the law, but the law as given

in the later case is regarded as having been the law, even at the date of the erroneous decision. To this rule there is one exception, that where there is a statute, and a decision giving it a certain construction, and there is a contract valid under such construction, the later decision does not retroact so as to invalidate such contract."

The matter of retroactivity has received comparatively little attention in this State through the years. *Falconer* has been cited on this point only twice and then by dissenting judges who wished to overturn a prior principle. *See Pickens v. Coal River Boom Company*, 66 W.Va. 10, 24, 65 S.E. 865, 870 (1909); *Nomar v. Ballard*, 134 W.Va. 492, 514, 60 S.E.2d 710, 722 (1950).

In note 4 of *Call v. McKenzie*, W.Va., 220 S.E.2d 665, 671 (1975), this Court refused to render the rule of that case retroactive, stating:

"Our holding in this case is not retroactive. The United States Supreme Court has held that 'there is no inflexibile constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language of the Bill of Rights.' *Williams v. United States*, 401 U.S. 646, 651, 91 S. Ct. 1148, 1151, 28 L. Ed.2d 388 (1971). According to the Supreme Court, retroactive application of new constitutional doctrine is indicated where the purpose of the doctrine is 'to overcome an aspect of the criminal trial that substantially impairs its truth finding function and so raises serious questions about the accuracy of guilty verdicts in past trials.' *Id.* at 653, 91 S.Ct. at 1152."

*Call* involved the right of an indigent to receive a copy of the record in his case following conviction pursuant to a guilty plea.

In three other cases, the Court, without discussing the issue, gave some effect to the doctrine. *State v. Grimm*, W.Va., 195 S.E.2d 637 (1973), established a new insanity test but applied it only to future cases. In *State v.*

*Pendry*, W.Va., 227 S.E.2d 210 (1976), and *State v. Mc-Aboy*, W.Va., S.E.2d (1977), the principles established were deemed not to be retroactive except to those cases pending in the trial or appellate process. Finally, *Conner, supra,* in note 18, makes the following statement: "Our holding does require that in the future it is constitutionally mandated that credit be given." It should be noted that in each of these cases, the retroactivity doctrine was not raised by the parties, so the Court's expression was dictum.

The United States Supreme Court has not spoken directly to the point of the effect of its retroactivity holding on state courts, where its decision involved federal constitutional standards which are made binding on the states through the Fourteenth Amendment to the United States Constitution. Certainly, *Hankerson* and other Supreme Court cases[2] giving full retroactive application to certain federal constitutional standards suggest that the Supreme Court's retroactivity rule is binding on the states. However, there is a lack of uniformity on this point by other courts. Compare *Holt v. Black*, 550 F.2d 1061 (6th Cir. 1977); *In Re Bryan*, 129 Cal. Rptr. 293, 548 P.2d 693 (1976); with *Jackson v. Justices of Superior Court of Massachusetts*, 549 F.2d 215 (1st Cir. 1977), *cert. denied*, U.S., 52 L. Ed. 2d 370, 97 S. Ct. 1666; *Stokes v. Commonwealth*, 336 N.E.2d 735 (Mass. 1975); *Commonwealth v. a Juvenile*, 351 N.E.2d 521 (Mass. 1976); *State v. Knowles*, 371 A.2d 624 (Me. 1977).

We need not speculate on this principle for purposes of this case. *Conner* was decided under the Double Jeopardy Clause of our State's Constitution. West Virginia Constitution, Article III, Section 5. While it is true that a state may not interpret its constitutional guarantee which is identical to a federal constitutional guarantee

---

[2] *Hankerson v. North Carolina*, U.S., 53 L. Ed. 2d 306, 97 S. Ct. 2339 (1977); *Ivan V. v. City of New York*, 407 U.S. 203, 32 L. Ed. 2d 659, 92 S. Ct. 1951 (1972); *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968); *Moore v. Illinois*, 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562 (1972).

below the federal level, nothing prevents a state court from equaling or exceeding the federal standard.[3]

We do not attempt to state a single answer to questions that may arise on the issue of retroactivity. The limited issue involved in this case is whether the double jeopardy violation found in *Conner* should be made retroactive. We conclude that it must. We agree with the analysis made in *Robinson, supra,* as to the impact of principles of double jeopardy in criminal proceedings. It does not operate on the procedural rules governing a trial.

Double jeopardy is the threshold barrier which precludes a second criminal trial no matter how fairly the first might have been conducted. Moreover, a second punishment for the same offense is precluded. The scope of the Double Jeopardy Clause is considerably more far-reaching than those constitutional doctrines which are found retroactive because they prevent substantial impairment of the truth-finding function. Double jeopardy is not concerned with guilt or innocence, nor the accuracy or fairness of the trial proceedings. It is bottomed on the premise that a past event precludes the entire present proceeding.

We agree with *Hankerson, supra,* that where the new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function, then neither the good faith reliance on the old law nor the severe impact on the administration of justice will preclude retroactive application. As noted above, the impact of the double jeopardy prohibition goes far beyond any consideration of the truth-finding function and, consequently, considerations of reliance and the effect on the administration of justice are not relevant.

It is for these reasons that *Conner* is deemed fully retroactive, and petitioner, Adkins, in this case is enti-

---

[3] *Oregon v. Hass,* 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975); *Sibron v. New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968).

tled to receive credit on his underlying sentence for the time spent on parole.

*Writ awarded.*

CAPLAN, CHIEF JUSTICE, *dissenting:*

I respectfully dissent. It is my opinion that *Conner v. Griffith*, ____ W. Va. ____, S.E.2d (September 1977) clearly held that the ruling thereof was to be prospective only. The majority opinion in *Conner* contained this language: "[o]ur holding does require that *in the future* it is constitutionally mandated that credit be given." (Footnote 18, *Conner v. Griffith, supra;* emphasis mine)